IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MELVIN RAY-EL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL ACTION 03-0391-BH-D |
| | ) |
| GRANTT CULLIVER, et al., | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding <u>pro se</u> and <u>in forma pauperis</u> filed a Complaint under 42 U.S.C. § 1983. (Docs. 10, 11, 12). This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on defendants' motion for summary judgment (Docs. 23, 24, 30, 47, 55), and plaintiff's opposition to motion for summary judgment. (Docs. 36, 37). For the reasons stated herein, it is recommended that defendants' motion for summary judgment be granted, and that plaintiff's action be dismissed in its entirety.

I.  SUMMARY OF ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

Plaintiff, Melvin Ray-El, is an Alabama Department of Corrections Inmate currently housed at Holman Correctional Facility. (Doc. 10). According to plaintiff, in 2003, he was held in administrative

segregation for a period of eight months, during which time he was denied physical access to the prison's law library and, instead, was restricted to the use of two books from the law library every forty-eight hours. (Doc. 10 at 10; Doc. 24 at 2-4; Doc. 36 at 8). Also during that time period, the prison mail clerk, defendant Jennifer Parker, withheld plaintiff's mail on two occasions on the basis that it violated the prison's regulations restricting the number of pages of photocopies of internet material that can be sent to an inmate at one time. (Doc. 10 at 11; Doc. 24 at 18-19). On a third occasion, defendant Parker withheld plaintiff's mail on the basis that it contained a portion of a book, which violated the prison's regulations restricting the receipt of books from anyone other than the publisher. (Doc. 20 at 2; Doc. 47 at 2). On each occasion following defendant Parker's rejection of plaintiff's mail, plaintiff appealed the decision to the warden, Grantt Culliver, and Culliver denied the appeals. (Doc. 10 at 5, 11; Doc. 24 at 4; Doc. 47 at 2-3).

On June 20, 2003, plaintiff filed the present § 1983 action. (Doc. 1). On August 25, 2003, the Court ordered plaintiff to re-file his Complaint on this Court's form, which plaintiff did on September 12, 2003, alleging that, while he was in administrative segregation, defendants Culliver and Parker violated his right of access to the courts by denying him physical access to the law library, by failing to provide him assistance from a trained law clerk, and by rejecting his mail which contained photocopies of case law from the internet. (Doc. 9; Doc. 10 at 10-12). In addition, plaintiff claims that defendants were deliberately indifferent to his litigation filing deadlines, causing him "mental anguish [and] psychological and emotional distress . . . due to the possibility of procedural bars, dismissal of action or denial of relief," thereby violating plaintiff's Eighth Amendment right to be free from cruel and

2

unusual punishment.  (Id. at 12).  Plaintiff also claims that defendants violated his Fourteenth Amendment right to due process by denying him an appeals process related to his grievances.  (Id.).  On April 29, 2004, plaintiff filed a Motion for Leave to Amend his Complaint to add a final claim for retaliation arising out of defendants' rejection of his mail containing a chapter of a book on tax and government.  (Doc. 20 at 1-2, 5).  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief,[1] for these alleged constitutional violations.  (Doc. 10 at 8, 13).

In defendants' Answers and Special Reports filed on May 11, 2004, and November 8, 2004, defendants admit that plaintiff was denied physical access to the prison's law library while he was in administrative segregation, as well as assistance from a trained law clerk, and they admit that they withheld certain mail containing numerous pages of photocopies of cases from the internet and a chapter of a book that was not sent by a publisher.  (Doc. 24 at 2-5; Doc. 47 at 2; Doc. 55 at 1).  However, defendants deny that, by doing so, they have violated plaintiff's constitutional rights.  (Id.; Doc. 23 at 1).  Defendants further deny that they withheld mail from plaintiff in retaliation for plaintiff filing the present lawsuit.  (Doc. 47 at 2).  Finally, defendants maintain that they are entitled to absolute

---

[1] On September 27, 2004, the Court issued an order adopting the Report and Recommendation of the undersigned denying plaintiff's motion for a preliminary injunction on the basis that plaintiff was no longer housed in administrative segregation at Holman Prison, and, thus, his request for injunctive relief related to that confinement was moot.  (Doc. 44; Doc. 38 at 4-5).  For the same reasons discussed therein, plaintiff's request in his Complaint for declaratory and injunctive relief related to his confinement in administrative segregation is moot, and defendants are entitled to judgment as a matter of law thereon.

and qualified immunity from plaintiff's claims.[2]  (Doc. 24 at 3).

On July 29, 2004, the Court ordered that defendants' Special Report and Answer be treated as a motion for summary judgment.  (Doc. 31).  The Court advised plaintiff that he could file a response to the motion on or before August 27, 2004, and the Court advised the parties that it would take the motion under submission on that date.  (Id.).  On August 30, 2004, plaintiff filed a brief and evidentiary submission in opposition to defendants' motion for summary judgment, reasserting the claims alleged in his Complaint.  (Docs. 36, 37).  On September 8, 2004,  the Court granted plaintiff's motion for leave to amend his Complaint to add a claim for retaliation.  (Doc. 39 at 2).  Defendants filed a Supplemental Special Report and Answer to the Amended Complaint on November 8, 2004, and March 8, 2005, respectively.  (Doc. 47, 55).  The Court ordered the supplemental pleadings to be treated as a motion for summary judgment and extended plaintiff's deadline to file a response to the motion for summary judgment to July 13, 2005.  (Docs. 58, 59).  The Court took defendants' motion for summary

---

[2] Plaintiff does not specify whether he is suing defendants in their official or individual capacities or both.  Thus, the Court will consider both.  As state officials, defendants are absolutely immune from suit for damages in their official capacities.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

judgment under submission on July 14, 2005.  (Doc. 59).

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A factual dispute is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  Moreover, what are considered to be the "'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes."  Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992).  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and, in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress &

Co., 398 U.S. 144, 157 (1970); Tipton, 965 F.2d at 998-99.  In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

Once the movant satisfies its initial burden under Rule 56(c), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis omitted).  "'[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Tipton, 965 F.2d at 999 (quoting Anderson, 477 U.S. at 255).  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587.

Moreover, the non-movant bears "the burden of coming forward with sufficient evidence on *each element* that must be proved."  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990) (emphasis in original).  If "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III.  DISCUSSION

In this action, plaintiff seeks redress for alleged constitutional deprivations pursuant to 42 U.S.C. § 1983.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Specifically, plaintiff claims that he is entitled to relief for defendants' failure to provide him physical access to the prison's law library while he was in administrative segregation, defendants' failure to provide him a trained law clerk during that time, and defendants' rejection of his mail during that time, which plaintiff claims violated his right to access to the courts and his Eighth Amendment right to be free from cruel and unusual punishment.  (Doc. 10 at 10-12).  Plaintiff also claims that defendants violated his Fourteenth Amendment due process rights by failing to provide him an appeals process to redress his grievances.  (Id. at 12).  Finally, plaintiff claims that, on one occasion while he was in administrative segregation, defendants withheld his mail in retaliation for plaintiff filing the present lawsuit.  (Doc. 20).  For the following reasons, the Court finds that defendants are entitled to judgment as a matter of law on plaintiff's claims in their entirety.

A.       Plaintiff's Claim for Denial of Access to the Courts.

As stated above, in his Complaint, plaintiff alleges that defendants' denial of physical access to the law library, denial of access to a trained law clerk, and rejection of his mail containing case law from

7

the internet, all while he was in administrative segregation, violated his constitutional right of access to the courts.  (Doc. 10 at 10-13).  The Court disagrees.

It is without question that "prisoners have a constitutional right of access to the courts." Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003) (quoting Bounds v. Smith, 430 U.S. 817, 821 (1977) (internal quotation marks omitted)).

> Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment.  Christopher v. Harbury, 536 U.S. 403, 415 n.12, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) (noting the Supreme Court's past reliance on all of these bases); see also Bank of Jackson County v. Cherry, 980 F.2d 1362, 1370 (11th Cir. 1993) (grounding the right of access to courts in the First Amendment).  To pass constitutional muster, access to the courts must be more than merely formal; it must also be adequate, effective, and meaningful.  Ryland v. Shapiro, 708 F.2d 967, 972 (5th Cir. 1983) (citing Bounds v. Smith, 430 U.S. 817, 822, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977)).

Chappell v. Rich, 340 F.3d 1279, 1282-83 (11th Cir. 2003).  "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or ... impeded.'"  Jackson, 331 F.3d at 797 (quoting Lewis v. Casey, 518 U.S. 343, 353 (1996)).  Indeed, "[t]he mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment. The inmate must show that this inability caused an actual harm. . . ." Akins v. U.S., 204 F.3d 1086, 1090 (11th Cir. 2000).

In Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998), the Eleventh Circuit stated:

8

> "[T]he fundamental constitutional right of access to the courts requires prison authorities to ... provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Bounds v. Smith</u>, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498, 52 L. Ed. 2d 72 (1977). The Supreme Court, however, has clarified that prisoners' contentions of deprivations of access to courts must show actual injury as a "constitutional prerequisite." <u>Lewis v. Casey</u>, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996); see <u>Weaver v. Brenner</u>, 40 F.3d 527, 533 (2d Cir. 1994). . . . While <u>Bounds</u> guarantees the right of access to the courts under the Fourteenth Amendment, prisoners have no inherent or independent right of access to a law library or to legal assistance. <u>See</u> <u>Lewis</u>, 518 U.S. at 349-51, 116 S. Ct. at 2179-80. Instead, they must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement. <u>Id.</u> at 355-57, 116 S. Ct. at 2182. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Id.</u> at 355, 116 S. Ct. at 2182.
>
> . . .
>
> To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials. <u>See</u> <u>id.</u> at 1446. Therefore, in an access-to-courts claim, "a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic." <u>Sabers v. Delano</u>, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam). Rather, a plaintiff must demonstrate that the lack of a law library or inadequate access to counsel hindered his "efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights." <u>Id.</u>

<u>Wilson</u>, 163 F.3d at 1291 (emphasis in original).

In this case, plaintiff alleges that, because of defendants' failure to provide him physical access to the law library, a trained law clerk, and copies of case law that he received in the mail, he had no means by which to properly research and file appellate briefs in three criminal and civil actions that were pending while he was in administrative segregation. (Doc. 10 at 10-12). Defendants argue, however,

9

that plaintiff did have access to the prison law library while he was in administrative segregation by virtue of a prison book mobile system which allowed plaintiff to request and check out two books from the law library every forty-eight hours. (Doc. 24 at 2-5, 16). Assuming, *arguendo*, that defendants' book mobile system was tantamount to no access to the prison's law library, plaintiff still must present evidence that he was denied access to the courts, which he has failed to do.

In this case, plaintiff's only references to specific pending legal matters allegedly affected by defendants' conduct are contained in his Motion for Temporary Restraining Order and his Motion for Leave to Amend the Complaint. (Docs. 7, 8, 20). In plaintiff's declaration filed in support of his Motion for a Temporary Restraining Order, plaintiff references a civil action pending in the Circuit Court of Madison County, Alabama,[3] and two appeals to the Alabama Court of Criminal Appeals, CR-02-1473 and CR-02-1766. (Doc. 7, Ex. 2 at 2).

With respect to CR-02-1473, plaintiff alleges that defendants' conduct caused him to have to request an extension for filing his brief to the Alabama Court of Criminal Appeals, which plaintiff concedes was granted. (Doc. 7 at 3-4; Doc. 8 at 14-17). The Court's legal research further shows that CR-02-1473 was an appeal from the Circuit Court of Etowah County, Alabama, following the denial of four petitions for post-conviction relief under Rule 32, Ala. R. Crim. P., in which plaintiff attacked his 1990 guilty plea convictions for burglary and theft of property. See Ray v. State, 895 So. 2d 1063 (Ala. Crim. App. 2004). In his appeal in CR-02-1473, plaintiff argued that the state circuit court lacked jurisdiction to summarily deny his Rule 32 petitions. The Alabama Court of Criminal Appeals agreed with plaintiff and held that the circuit court lacked subject matter jurisdiction to

---

[3] Plaintiff has provided the Court no information concerning the nature of this civil action.

10

consider plaintiff's post-conviction petitions and declared the circuit court's order denying plaintiff's request for relief a nullity. See Ray, 895 So. 2d at 1065. Thus, plaintiff's appeal in CR-02-1473 was successful.

With respect to CR-02-1766, the Court's legal research reveals that this was an appeal to the Alabama Court of Criminal Appeals from the Circuit Court of Madison County, Alabama, following the denial of a Rule 32 petition for post-conviction relief. See Ray v. State, 890 So. 2d 1107 (Ala. Crim. App. 2004). Although the Alabama Court of Criminal Appeals affirmed the circuit court's denial of plaintiff's Rule 32 petition in CR-02-1766, the court's opinion reflects that plaintiff was represented by legal counsel, Richard E. Shields. Thus, plaintiff's claim of prejudice and denial of access to courts with respect to this appeal is groundless.

Last, in plaintiff's Motion for Leave to Amend the Complaint, plaintiff refers to an unspecified petition for a writ of certiorari to the Alabama Supreme Court, claiming that one of the mail packages withheld by defendants also contained postage stamps which he needed to file the upcoming petition. (Doc. 20 at 2). Plaintiff states, however, that he borrowed the necessary stamps and successfully mailed the petition on time. ( Id. at 3). Thus, again, plaintiff has failed to show prejudice with respect to the pending action.

Because plaintiff has failed to show that a nonfrivolous action, such as a direct or collateral attack on his sentence or a civil rights action based on the conduct of prison officials, was frustrated or impeded by the defendants' conduct, his claim for denial of access to the courts fails as a matter of law. See Wilson, 163 F.3d at 1291; see also Jackson, 331 F.3d at 797.

B.   Plaintiff's Eighth Amendment Claim.

11

In his Complaint, plaintiff also alleges that, when defendants failed to provide him physical access to the prison law library, a trained law clerk, and his mail containing copies of case law from the internet, they were "deliberately indifferen[t]" to the "possibility" of denial or dismissal of his pending legal actions. (Doc. 10 at 12). Plaintiff seeks damages for "mental anguish" and "psychological and emotional distress" arising out of defendants' alleged Eighth Amendment violation. (Id.).

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishment." Robinson v. California, 370 U.S. 660, 666-67 (1962). Consequently, "states may not impose punishments that shock the conscience, involve unnecessary and wanton infliction of pain, offend evolving notions of decency, or are grossly disproportionate to the offense for which they are imposed." Hamm v. DeKalb County, 774 F.2d 1567, 1571 (11th Cir. 1985). With regard to conditions of confinement, a state may violate the Eighth Amendment if it is deliberately indifferent to a prisoner's serious medical needs or if the state fails to provide the prisoner with "reasonably adequate food, clothing, shelter, and sanitation." Id. at 1572.

Despite plaintiff's characterization of defendants' conduct in this case as an Eighth Amendment violation, the allegations related to plaintiff's inability to conduct legal research while in administrative segregation are clearly in the nature of an access to courts claim and do not implicate the Eighth Amendment. See Bounds, 430 U.S. at 828 (the requirement that prison authorities provide adequate law libraries or adequate assistance from a person trained in the law is derived from "the fundamental constitutional right of access to the courts."); see also Mitchell v. Maynard, 80 F.3d 1433, 1448 (10th Cir. 1996) (the "constitutional protection of access to the courts is a due process right guaranteed by

the Fourteenth Amendment and not the Eighth Amendment's cruel and unusual punishment clause. . . ."); Luney v. Brureton, 2005 WL 121720, *9 (S.D.N.Y. 2005) ("The adequacy of law library services does not implicate the Eighth Amendment, however, but rather the right of access to the courts."); Loe v. Wilkinson, 604 F. Supp. 130, 136 (M.D. Pa. 1984) (diminished access to the general library while prisoner was in administrative detention did not constitute an Eighth Amendment violation).

In this case, defendants' failure to provide plaintiff physical access to the prison law library, a trained law clerk, and personal mail containing cases from the internet while he was in administrative segregation neither implicates nor violates the Eighth Amendment.[4]  Therefore, defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim.

C.      Plaintiff's Fourteenth Amendment Claim.

Next, plaintiff claims that defendants violated his Fourteenth Amendment right to due process by denying him an appeals process related to his grievances.  (Doc. 10 at 12).  However, plaintiff's own allegations, and the record evidence, refute this claim.

In his Complaint and other filings with the Court, plaintiff readily admits that, on each occasion that his mail was rejected by defendant Parker, he protested the decision and filed an appeal to Warden Culliver, who ultimately denied the appeals.  (Doc. 10 at 5, 11).  Plaintiff even submitted to

---

[4] Defendants are further entitled to judgment as a matter of law on plaintiff's claim for damages for "mental anguish and "psychological and emotional distress" arising out of defendants' alleged Eighth Amendment violation.  42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act of 1995 provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  There being no evidence of physical injury in this case, plaintiff's claim for mental and emotional injury caused by defendants' alleged Eighth Amendment violation is barred for this reason, as well.

this Court a Notification of Rejected Mail, which informed him that he had the right to protest the rejection of his mail and to appeal the decision to the warden for an independent review. (Doc. 8 at 12). Defendants likewise acknowledge that plaintiff appealed each decision and that defendant Culliver denied each appeal. (Doc. 24 at 4; Doc. 47 at 2-3). The record also contains a copy of Alabama Department of Corrections ("ADOC") Administrative Regulation 303, which provides that, in the event that a prisoner's mail is rejected, a notification of rejected mail will be immediately forwarded to the inmate informing him of his right to appeal the decision. (Doc. 30 at 24). ADOC Standard Operating Procedure 6-006, also in the record, likewise provides that an inmate wishing to protest the rejection of his mail may request a "review hearing" regarding the return of the mail. (Id. at 12).

Therefore, neither plaintiff's evidence nor his own allegations support his claim that his Fourteenth Amendment right to due process was violated by the absence of an appeals process to redress his grievances. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's Fourteenth Amendment claim.

D.     Plaintiff's Retaliation Claim.

Last, plaintiff alleges that, in April, 2004, defendants withheld a mail package containing a chapter of a book on tax and government. (Doc. 20 at 1-2, 5). Plaintiff alleges that the mail was withheld in retaliation for filing the present lawsuit. (Id.). Defendants maintain, to the contrary, that they withheld plaintiff's mail package because it contained a chapter of a book sent by an individual, in violation of prison Administrative Regulation 303 requiring that publications be sent directly by the publisher. (Doc. 47 at 2, 7).

It is well established that a prisoner's constitutional rights are violated if adverse action is taken

14

against him in retaliation for the exercise of First Amendment rights.  See Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  In the prison setting "[t]he state may not burden [First Amendment rights] with practices that are not reasonably related to legitimate penological objectives . . . nor act with the intent of chilling that First Amendment right. . . ."  Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (citing Turner v. Safley, 482 U.S. 78, 85-89 (1987), and Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989)).

Retaliation against an inmate for exercising a constitutional right may be a constitutional violation even if no separate and additional constitutional violation ensues.  Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989).  This is because "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising" his constitutional right to free speech, redress of grievances, or similar activity.  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997) (quoting Thomas, 880 F.2d at 1242).

"Although prisoners have a right to be free from retaliatory punishment for the exercise of a constitutional right, Adams v. James, 784 F.2d 1077, 1079-80 (11th Cir. 1986); Bridges v. Russell, 757 F.2d 1155 (11th Cir. 1985), broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983."  Robinson v. Boyd, 2005 WL 1278136, *3 (N.D. Fla. 2005).  The plaintiff-prisoner must come forward with more than "'general attacks' upon the defendant's motivations and must produce 'affirmative evidence' of retaliation," id. (quoting Crawford-El v. Britton, 523 U.S. 574, 600 (1998)), establishing a causal relationship between the constitutionally protected activity and the alleged adverse treatment.  Farrow, 320 F.3d at 1249.  Such a causal connection may be established by a chronology of events that creates "a plausible inference of retaliation."  Robinson, 2005 WL 1278136 at *3 (citing Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

15

Because claims of retaliation may be easily fabricated, however, they should be reviewed "'with skepticism and particular care' due to the 'near inevitability' that prisoners will take exception with the decisions and actions of prison officials. . . ." Reed v. Barnes, 2005 WL 1278868, *3 (N.D. Fla. 2005) (citations omitted). "Appropriate deference should be afforded to prison officials 'in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory.'" Robinson, 2005 WL 1278136 at *3 (quoting Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citing Sandin v. Conner, 515 U.S. 472, 482 (1995)).

In the instant case, plaintiff's allegation that defendants withheld a mail package in April 2004 containing a chapter of a book on tax and government in retaliation for plaintiff filing the present lawsuit on June 20, 2003, is unsupported by the evidence. ADOC Standard Operating Procedure 6-006 provides that "[i]nmates may receive a limited number of publications, books, magazines, newspapers, etc. (publications) so long as the publications are received directly from the publisher and pre-paid from inmates Prisoner's Money on Deposit Account (PMOD)." (Doc. 30 at 14). This requirement is echoed in ADOC Administrative Regulation 303. (Doc. 30 at 25).

Defendants maintain that they withheld plaintiff's mail package containing the chapter of the book on tax and government because it violated these regulations. Indeed, plaintiff readily admits that the chapter of the book at issue here was sent to him by his family, not a publisher, which is a violation of Standard Operating Procedure 6-006 and Administrative Regulation 303. "[A]n inmate may not state a claim of retaliation where the 'discipline [was] imparted for acts that a prisoner was not entitled to perform.'" Robinson, 2005 WL 1278136 at *4 *(*quoting Cowans v. Warren, 150 F.3d 910, 912 (8th Cir. 1998) ("where an inmate has violated an actual prison rule, no retaliation claim can be

16

stated."). Moreover, there is no temporal proximity between the filing of the present lawsuit on June 20, 2003, and the rejection of plaintiff's mail in April of 2004. Affording appropriate deference to defendants in the evaluation of their proffered legitimate penological reason for rejecting plaintiff's mail on this occasion, see Sandin, 515 U.S. at 482, plaintiff has failed to establish any causal connection between the rejection of the mail and the filing of the instant Complaint. Thus, defendants are entitled to judgment as a matter of law on plaintiff's retaliation claim.

## IV.  CONCLUSION

Based on the foregoing, it is the recommendation of the undersigned that the motion for summary judgment of defendants Grantt Culliver and Jennifer Parker (Docs. 23, 24, 30, 47, 55), be granted and that plaintiff's Complaint be dismissed in its entirety.

The attached sheet contains important information regarding objections to the Report and Recommendation.

DONE this 28th day of September, 2005.

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**KRISTI K. DuBOSE**
**UNITED STATES MAGISTRATE JUDGE**